[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
I. The Dissolution of the Marriage
It is found that all the allegations of plaintiff's complaint have been proven, that the marriage has broken down irretrievably, and the marriage is ordered dissolved for that reason.
II. The Milton Street Property Issue
During the course of this eight day trial which began on July 5, 1995 and continued on various dates thereafter until final argument was heard on October 25, 1995, plaintiff contended and offered evidence to show that CT Page 12482-N defendant had at the very least an equitable interest in property at No. 130-132 Milton Street, West Hartford, Connecticut, presently standing in the name of his brother, Michael J. Mangini.
This court is not persuaded that defendant's acquisition of a one half interest in said property and his later conveyance of it to his brother is subject to any interpretation other than as testified to by him. It concludes on the evidence that said property should in no way be considered when the court distributes the marital estate of the parties.
III. The Marital Estate of the Parties On Hand for Distribution
 Plaintiff (Wife)
 No. 102-104 Dover Road Total Value $195,000 West Hartford, CT Less Mtg. — 8,894 -------- Total Equity 186,106
1/2 interest $93,053
 No. 50 Harvest Lane Total Value $188,000 West Hartford, CT Less Mtg. 64,233 -------- Total Equity $112,767
1/2 interest $56,384
 1990 Plymouth Horizon $2,300 Household Furniture — People's Bank C/A 425 Bond 75 Aetna Life Insurance Policy F.V. $16,000 C.S.V. — -------- Total Value $152,237
 Defendant (husband)
 1/2 Equity in No. 102-104 Dover Rd. $ 93,053 West Hartford, CT 1/2 Equity in No. 50 Harvest 56,383 CT Page 12482-O Lane, West Hartford, CT No. 72 Lawrence Street, Hartford, CT, 1/2 interest (mother's home) 1984 Plymouth Voyager $3000 — son uses 1987 Mazda pick-up 2,300 Household furniture Mechanics C/A 289 People's Bank S/A 907 Shawmut Bank S/A 634 C.S.E.A. Credit Union S/A 2,327 Fleet Bank S.A. 9,379 Alden Electric — 100 Sh. at $3.00 300 Telesphere 160 Shares 3 State of CT Gen. Obl. Bonds 9,600 *Life Ins. State of CT F.V. $38,000 C.S.V. *Life Ins. Sun Life
 F.V. $50,000 C.S.V. $11,340 — C.S.E.A. I.R.A. 16,042 State of CT — Retirement Plan $28,557 Deferred Compensation $27,211
 Fleet Bank C/A 2,845 Fleet Bank S/A 1,438 U.S. Savings Bonds 12,575 ------ Total Value $235,283
Total value of Marital Estate $367,520
 *Because of the order of the court in Article VIII A these policies were not considered part of the distributable marital estate.
 The parties have further stipulated that certain bank accounts and stock be distributed to their two children as follows:
 To Daniel Mangini (Age 20)
 Mechanics Bank S/A $ 1640 Eagle Bank S/A 1499 CT Page 12482-P People's Bank 1760 Hartford Steam Boiler I U S.C.O. (U.G.M.A.) $13,763 ------- $18,662
 To Kristen Mangini (Age 24)
Bank of Boston E/A $ 1,265
IV. A Review of the Evidence as it Pertains to Sec. 46b-81c C.G.S.
a. General Background Information
The plaintiff wife, who is presently 49 years of age, and the defendant husband, who is 51, were married on September 16, 1967 — twenty-eight years ago. They have two children, both of whom are of age. A daughter Kristen is twenty four years old, and a son Daniel is twenty.
Plaintiff described her educational background as including her graduation from Our Lady of Sorrows grammar school and Hartford Public High School. Thereafter she attended a hairdressing school for 2000 hours. After her marriage plaintiff worked full time as a hairdresser until the birth of their first child in 1971 and part time thereafter until 1975. From then until 1983 her entire time was devoted almost exclusively to the usual duties of a housewife and mother. There followed work as a school crossing guard for the Town of West Hartford and as a hairdresser at Possibilities Hair Salon. After that she secured employment in the service department of Maryland Casualty Company where she managed files and performed light computer data entry duties. Her maximum earnings per year while there were between $18,000 and $20,000. Her benefits there included health care insurance, an incentive savings plan and vacations. Here employment there ended in May, 1991 after a dispute with a supervisor. She began her present full time employment as a switchboard operator and receptionist at American Red Cross in West Hartford, Connecticut in June, 1992. Her current financial affidavit reflects a gross weekly income therefrom of $311 with a weekly net after the usual deductions of $264. CT Page 12482-Q
Following defendant's graduation from Hartford Public High School in 1962 he began his present employment in the social services department of the State of Connecticut. Commencing as, a mail clerk he worked his way up through the ranks, serving successively in the shipping department, as a file clerk, and later for fifteen years as a supervisor. He is presently a mail; and duplicating supervisor in charge of the processing of welfare checks. His present gross weekly earnings are $965 with a weekly net after the usual deductions of $560. In addition, a weekly longevity payment of $12 together with net weekly rental income of $121 after deductions for mortgage and maintenance expenses give defendant a total net weekly income of $693.
For a short period of time following their marriage the couple resided with plaintiff's parents. In 1973 they purchased a two family home on Dover Road, West Hartford, Connecticut which they continue to own and from which, as previously indicated on defendant's financial affidavit, net weekly rental income of $121 is received. In 1984 they purchased their present family home at 50 Harvest Lane, West Hartford, Connecticut where they both presently reside.
b. Health
Plaintiff testified that she had a loss of hearing in both ears and wore a hearing aid in her left ear. She added that her blood pressure was fairly normal now and that she has an on-going weight problem. Lastly she mentioned that she had contracted eczema in 1989, that water or soap was an irritant to her hands, requiring her to wash with rubber or cotton gloves, and that this condition interfered with her work as a hairdresser.
Defendant did not discuss this subject and appears to be in reasonably good health.
c. Fault
A review of the court's notes reveals the following sentiments of each party in this issue.
Plaintiff
CT Page 12482-R
Plaintiff encapsulated her feelings in stating that "I believe there has been a lack of appreciation, a disrespect for me which I didn't realize until the late 1980's". Elaborating, she testified that "Early on I found it difficult to discuss anything with him. I found it easier not to contradict him." She stated that defendant criticized her constantly concerning her spending habits. Her response was "I never spent money on myself. I didn't drive. I had little needs. If something was urgent I asked him for it. I had no kind of an allowance. I didn't know where his paycheck was going. I paid little attention to that sort of thing."
Plaintiff related how defendant was critical of her piano playing, claimed she had a brain like a bird, that their children were smarter than she was, that she was overweight and that she was lacking in affection. She testified in detail concerning defendant's obsession with saving money, requiring her to save paper bags and bottles. Defendant's thoughts on methods of conserving water and electricity provided additional minor daily irritants. Plaintiffs concluded by stating that she moved out of defendant's bedroom and stopped sleeping with him in 1988.
Defendant
Defendant's criticism of plaintiff centered for the most part on what he considered to be her problem with alcohol, her lack of financial contribution to the household and her compulsive purchases of clothing.
Defendant testified that plaintiff used alcohol excessively at the time they married, that her father had a similar problem, and that plaintiff was engaged in alcohol counselling for two years in the 1980's.
A review of the court's notes of defendant's comments on these issues reveal the following:
From 1984 on she neglected the cleaning, the laundry, the meals. She would play basketball alone in the backyard until midnight at anytime of the year and then go to bed. It got progressively worse. In 1991 she went on a cruise with several women. Since 1992 her drinking has slowed down or stopped. She stopped doing 90% of the cooking in 1984. She stopped doing the CT Page 12482-S children's laundry and ironing. I bought the children's clothes. I baked cakes and pies. I set up rules for the children. She wouldn't support me in disciplining the children. She opened my mail and spent rental security receipts belonging to tenants."
Defendant introduced several photographs showing countless numbers of dresses in plaintiff's closet, still with the price tags on them.
Defendant's concluding remarks on the issue of fault were that "it's been many years since we were physically intimate. I've always been faithful to her."
There is no evidence of physical violence on the part of either party.
After reviewing and weighing all the evidence on this issue, the court concludes that responsibility for the irretrievable breakdown of the marriage rests primarily with the plaintiff.
d. Other Factors
Defendant has a greater opportunity than does plaintiff for the future acquisition of capital assets and income. His contribution has been greater than that of the defendant in the acquisition, preservation or appreciation in value of their marital estate. The liabilities and needs of the parties are substantially the same.
Conclusion
After having carefully considered all of the evidence as it relates to all of the factors set forth in Sec. 46b-81e C.G.S., the court concludes that the marital estate of the parties should be divided in the following manner:
Plaintiff 50%
Defendant 50%
V. The Distribution of the Marital Estate in Accordance With the Findings made in Article IV, Supra
CT Page 12482-T
 Total Marital Estate $ 387,520 Plaintiff's share — 50% 193,760 Defendant's share — 50% 193,760
 Plaintiff Shall Take and Have:
 Total equity in No. 102-104 Dover Rd. $ 186,106 West Hartford, CT 1990 Plymouth Horizon 2,300 Household furniture Peoples Bank c/a 425 Bond 75 Aetna Life Insurance Policy F.V. $16,000 C.S.V. Amount due from defendant 4,854 -------- Total $193,760
 Defendant Shall Take and Have:
 Total equity in No. 50 Harvest Lane, $112,767 West Hartford, Connecticut 1987 Mazda Pick-up 2,300 No. 72 Lawrence St, Hartford, CT (1/2 interest — mother's house) 1984 Plymouth Voyager ($3000 — son uses) Fleet Bank S/A 6,355 C.S.E.A. Credit Union 2,327 3 State of Connecticut Gen. Obl. Bonds 9,600 *Life Insurance State of Connecticut F.V. $38,000 C.S.V. *Life Insurance Sun Life F.V. $50,000 C.S.V. $11,340 C.S.E.A. I.R.A. $16,042 State of Connecticut — Retirement Plan $28,557 Deferred Compensation $27,211 Fleet Bank C/A 2,845 Fleet Bank S/A 1,438 U.S. Savings Bonds 12,575 Alden Electric 300 shares 300 CT Page 12482-U ------- Total $ 193,760
*See Article VIII B.
Note A
In accordance with the stipulation of the parties the following bank accounts and stock are distributed to the two children of the parties as follows:
To Daniel Mangini (age 20)
 Mechanics S/A $ 1,640 Eagle Bank S/A 1,499 Peoples Bank 1,760 Hartford Steam Boiler 3,763 Ins. Co. Stock (U.G.M.A.) -------- Total $ 18,662
To Kristen Mangini (age 24)
Bank of Boston S/A $ 1,265
Note B
The $4,854 due plaintiff by defendant was obtained from his following bank accounts:
 Mechanics C/A $ 289 Peoples Bank S/A 907 Shawmut Bank S/A 634 Fleet Bank ($9379) 3,024 ------- $4,854
 VI. Supplemental Orders Relating to the Distribution of the Marital Estate
 A. Said sum of $4,854 due plaintiff by Defendant shall be paid to her within 15 days from date hereof. Interest on any unpaid balance of said sum shall accrue thereafter at the rate of 8 per cent per annum.
 B. The parties shall execute all documents necessary to carry out the orders of the court.
CT Page 12482-V
 C. Each of the parties shall be solely responsible for the payment of all mortgages or other liens on that property ordered distributed to that party by the court, and shall hold the other party harmless in that regard.
VII. Alimony
In making the following order concerning alimony, the court has considered all of the provisions of § 46b-82 C.G.S., including the awards which it has previously made pursuant to §46b-81 C.G.S. It is ordered that defendant shall pay as alimony to plaintiff the sum of $150 per week for a period of fourteen years at which time the plaintiff should be eligible for social security.
This order shall be non-modifiable as to term only, but shall sooner terminate upon the remarriage of the plaintiff or upon the death of either party. Said order shall also be suspended, reduced or terminated at the discretion of the court, as provided in § 46b-86(b) C.G.S.
During such time as defendant shall be required to pay alimony, the parties shall annually, commencing April 15, 1985, exchange federal income tax returns.
VIII. Other Orders
A. Defendant's Pension
While this court recognizes that defendant's pension is a marital asset, it believes that certain inequities are created in establishing its present value and thereafter including it along with the other assets in the estate. In this instance it considers it more prudent to remove the pension from the gross marital estate and to treat it as a separate marital asset. SeeKrafick v. Krafick, 234 Conn. 383 (1995).
Having considered all of the provisions of § 46b-81c C.G.S. as they relate to the evidence, this court orders that plaintiff be awarded 50 per cent of 29/33rds of defendant's retirement plan with the State of Connecticut and that a Qualified Domestic Relations Order (QDRO) enter reflecting this order. CT Page 12482-W
B. Life Insurance
The defendant shall maintain his existing life insurance policies in the total face amount of $88,000 with the plaintiff as irreversible beneficiary during such time as defendant shall be obligated in accordance with the terms of any financial order of this court.
C. Health Insurance
The proposed orders of neither party addressed this issue, and no order is made by the court in that regard.
D. Counsel Fees
No award of counsel fees is made to either party.
E. Liabilities
Each of the parties shall be solely responsible for all debts listed on his or her financial affidavit.
F. Personal Property
The personal property located at No. 50 Harvest Lane, West Hartford, Connecticut shall be equally divided between the parties. This court shall retain jurisdiction with reference to said property until such time as the parties have agreed upon an equitable division of the same.
Jonn D. Brennan State Judge Referee